9   239
10   107
37*  431
38*1057
9   239
d23   314

[No. 1302.   Decided June 26, 1894.]

EVELYN P. FERRY, *Appellant*, v. CLINTON P. FERRY, *Respondent*.

DIVORCE AND ALIMONY — VACATION OF DECREE — WANT OF JURISDICTION — FRAUD.

A decree of divorce granted in favor of the wife upon her cross complaint will not be set aside after the lapse of three years, upon her application therefor on the ground that the court never had jurisdiction of the action because of the non-residence of plaintiff, as the appearance of defendant in the cause, and her filing of a cross complaint therein upon which she procured a decree in her favor, estops her from now denying the jurisdiction of the court.

A decree of divorce procured by a wife, which includes a division of property, will not be set aside on the ground of fraud in that the division was based upon a valuation of property represented by the husband as a true one, while in fact it was but one-fifth of the actual value, when the wife was fully acquainted with the various parcels of land involved and could have readily discovered the valuation thereof by inquiry.

*Appeal from Superior Court, Pierce County.*

*Stevens, Seymour & Sharpstein*, for appellant.

*Elisha P. Ferry, H. K. Moore*, and *Fishback, Sapp & Ferry*, for respondent.

The opinion of the court was delivered by

STILES, J. — The parties to this action were husband and wife.   In September, 1889, respondent commenced an ac-

tion against appellant in the district court of Pierce county, for a divorce, alleging his residence in Washington for more than one year prior to the filing of the complaint. Appellant had previously commenced a like action against her husband in California; but upon being served with process in the Washington suit she saw fit to appear therein.    There was considerable negotiation between the counsel for the parties before her appearance was made, relating both to the form in which the action should proceed and to the division of the property, of which there was a large amount, nearly all realty, in Washington and Oregon.    These negotiations culminated in an agreement which was expressed by a stipulation filed in the cause, and dated October 5, 1889, under the terms of which the complaint was to be withdrawn and an amended complaint of a modified form substituted; an answer in the nature of a general denial and a cross complaint was then to be filed by the defendant, alleging a cause of action for a divorce upon ''mild grounds to be agreed upon by counsel for both parties;'' and the stipulation further provided a complete scheme of settlement of the property questions, whereby the defendant and cross complainant was to take specified property of the estimated value of $34,000, $10,000 in money, and $6,000 in installments for the support of a minor child; and the husband was to take the residue of the estate.    In addition to the provisions of the anticipated decree, it was agreed that the parties should execute and deliver mutual deeds for the further assurance of title.

The terms of the stipulation were carried out literally, the court granted a decree of divorce to appellant, and the deeds were executed and payments made.    The deeds were executed and placed in escrow October 15, and the decree was granted October 21, immediately after which the deeds were exchanged.    This action was commenced March —, 1893, and seeks to annul the decree and cancel the deeds

executed by appellant to respondent, on two grounds: (1) Because neither of the parties to the divorce suit was a resident of Washington, the plaintiff's allegations in that respect having been false; (2) because the appellant was deceived by respondent's intentional false statements concerning the amount and value of the estate cognizable under the divorce proceeding into believing that the entire estate was worth no more than $150,000, when in truth it was worth $750,000.

The objection that no cause of action was stated, and the bar of the statute of limitations, were urged by demurrer, which the court sustained.

1. It will be observed that the decree complained of was obtained at the suit of appellant upon her cross complaint, so that that numerous class of cases, wherein innocent parties against whom courts without jurisdiction for want of residence have rendered decrees of divorce were granted relief in both direct and collateral proceedings, are not in point. *Coulthurst v. Coulthurst*, 58 Cal. 239, is cited in support of the proposition that in this state the cross complainant in a divorce suit must plead residence. But that was an appeal from a decree, and it is by no means certain that the same court would have annulled a decree under the circumstances we have here. There was no express authorization of a cross complaint in the California practice, and the case cited was based upon the general provisions of the code concerning the pleading of a defendant seeking affirmative relief; whereas our statute (Code, 1881, § 2004) in terms provides for cross complaints without mentioning residence as a prerequisite. *Sterl v. Sterl*, 2 Ill. App. 223, is a case directly to the contrary under a statute reading, "No person shall be entitled to a divorce in pursuance of the provisions of this act who has not resided in the state one whole year next before filing his or her bill or petition;" and it was there held that where the husband was a

16—9 WASH.

resident, and filed his bill, the wife who lived in another state was entitled to have the entire case between her and her husband disposed of.

The reasoning of that case seems to be sound and to be especially applicable here. The appellant must rest, therefore, upon the non-residence of her husband, and in that she encounters a difficulty. The plaintiff alleged residence, and no one except the plaintiff knew better than the defendant whether that allegation was true or not. She was in California, and, although served personally, she was not obliged to appear, but could safely stand upon the ground that at all times and in all courts she could successfully combat the effect of any decree which might be entered in the case commenced here. She had actually there commenced a suit of like character against her husband; but she forbore to prosecute it, and after coming into the case here she stipulated to dismiss it. She did not make it known to the Pierce county court that she claimed her husband's residence to be elsewhere. She procured the modification of the complaint and obtained at the hands of the court a decree in her favor. She says no evidence was taken as to the residence of either party, and that there was no finding upon that subject; and it is not to be wondered at since the atmosphere of the case is that of one facilitated by both parties with the object of getting a decree on proof of as slight facts as possible. No one was deceived or defrauded in this unless it be the court; and now the same court is asked to set aside the decree thus rendered at the suit of one who is responsible for the imposition effected, after more than three years of acquiescence and enjoyment of the fruits of the action. It is enough to say that the authorities are decidedly against the proposition, and that courts cannot be used in that way. 2 Bishop, Mar. Div. & Sep., § 1548; *Kinnier v. Kinnier*, 45 N. Y. 535; *Nichols v. Nichols*, 25 N. J. Eq. 65; *Green v. Green*, 2 Gray, 361.

So far as these parties are concerned, within this state, they are no longer husband and wife.

2. But the real relief sought by this action is a readjustment of the property arrangement. A great deal of matter is stated in the complaint tending to show that the respondent had, in France, commenced a series of acts of cruelty toward appellant which were intended to place her at such a disadvantage that she would be practically compelled to accept a divorce on the terms which he might dictate. But be those things as they may, when the scene of the trouble was transferred to Tacoma, we are unable to see wherein there was much difference in the position of the parties, relative to their property. Appellant had counsel, and property of her own, besides the resource she had in orders of the court to compel respondent to furnish her means both for her maintenance and her defense. She alleges that for the purpose of defrauding her out of her due portion of the property respondent, who alone had knowledge of the extent and value of the estate, refused to make known of what the property consisted, and falsely represented it to be of only one-fifth its actual value. But again the court was at her service to compel her husband to make full disclosure of the property and to have it valued by impartial appraisers. Respondent could not have been called upon for a valuation, nor did appellant have any right to rely upon any estimate which he might offer; on the contrary, she would naturally be suspicious of it.

But although the state of ignorance alleged might have been in some degree excusable when the stipulation was entered into, that condition of things did not exist when the decree was entered, for, six days before that time (October 15), appellant had affixed her signature to deeds which minutely described every parcel of real estate now sought to be affected, so that she then knew from respond-

ent all that she could have expected to learn from him, viz., the particular description of the estate. There was nothing in the stipulation or in the fact of her having executed the deeds and placed them in escrow, which would have prevented the court, upon a showing, from going into the whole matter of the property and making a just division. The entry of the decree could have been postponed until a valuation could have been made, if necessary, since it was her decree and she controlled the entry of it.

We know of no rule prevailing in cases where husband or wife alleges fraud of this kind different from that which controls cases between other classes of parties. When the opportunity for discovering the fraud is presented it must be made use of promptly. Appellant says that she did not discover the falsity of respondent's representations until December 10, 1892; but the fraud, if any, was consummated and the action accrued October 21, 1889, when the decree was entered. The misrepresentation of value was mere opinion (*Parker v. Moulton*, 114 Mass. 99; 2 Kent, Com. 485), all reliance upon which was in appellant's own wrong when she became aware of the property items. A few letters of inquiry addressed to assessors would, within a few days, have furnished a fair basis for estimating the whole estate, and the alleged fraud would have been discovered. Three years and more were allowed to elapse, and then after the whole of the property decreed to her had been sold or mortgaged and the proceeds spent, this proceeding is commenced; but we think the statute, as well as equity, does not sanction the disturbance of the decree and the consequent conveyances after so long a delay.

Judgment affirmed.

DUNBAR, C. J., and SCOTT, ANDERS and HOYT, JJ., concur.