### JACOBS v. JACOBS.
No. 4642.

District Court of Alaska. Fourth Division. Fairbanks.
March 7, 1941.

Harry O. Arend, of Fairbanks, for plaintiff.
J. C. Winter, of Fairbanks, for defendant.

PRATT, District Judge.

In his complaint for a divorce, the plaintiff alleges that he has been an inhabitant of Alaska for more than two years last past and that he and defendant were married on the 11th day of October, 1940, at Virginia City, Nevada.

The defendant has filed a·countersuit asking for a divorce from the plaintiff. She makes no mention of any residence or inhabitancy on the part of herself and states statutory grounds for a divorce.

The plaintiff has demurred to the cross-complaint on the ground that it appears therefrom that the Court has no jurisdiction of the subject matter thereof.

It is maintained that the Alaska statute requires the same residence of a cross-complainant as of a plaintiff and that this is true by virtue of the divorce statute passed by Congress for Alaska in 1900 (amended in 1903), as well as by the organic act creating a legislative assembly for Alaska in 1912.

By an act approved June 6, 1900, 31 Stat. at Large, pages 408, 409, Congress, in passing a code for the Territory of Alaska, provided in Chapter 45 of Civil Procedure for actions to dissolve the marriage contract. Section 469 thereof is: "In an action for the dissolution of the marriage contract the plaintiff therein must be an inhabitant of the district at the commencement of the action and for three years prior thereto, which residence shall be sufficient to give the court jurisdiction without regard to the place where the marriage was solemnized or the cause of action arose."

By Act of Congress, approved March 2, 1903, 32 Stat. at Large, page 944, the above-mentioned section was amended by changing the three years' residence therein provided to two years. Said section, as amended in 1903, is now section 3992, Compiled Laws of Alaska, 1933.

Nowhere in the Act of Congress relative to the dissolution of the marriage contract, above-mentioned, is there any provision as to a cross-complaint on the part of defendant

for a divorce or as to a residence requirement of a defendant in a cross-complaint. It is provided in said chapter that an action for the dissolution of the marriage contract is an action of an equitable nature.

The defendant's right to file a cross-complaint arises out of the further provisions of section 3863, Compiled Laws of Alaska, 1933, which appears in the chapter entitled, "General Provisions Relating to Actions of an Equitable Nature," which states: "The counterclaim of the defendant shall be one upon which an action might be maintained by the defendant against the plaintiff in the action; and in addition to the cases specified in the subdivisions of section 3422 it is sufficient if it be connected with the subject of the action."

Before the passage of the above-mentioned act of Congress of June 6, 1900, establishing the code for Alaska, the courts of equity had established a very definite rule in regard to the residence qualifications in a divorce suit of a defendant to maintain a countersuit for divorce.

This rule is succinctly stated in 19 C.J., page 27, as follows: "Generally statutes making residence of plaintiff a prerequisite to the exercise of divorce jurisdiction *does* not preclude a nonresident defendant from filing a cross-bill and obtaining a decree of divorce against plaintiff. * * * *"

Under the above-quoted rule are cited the following cases: Sterl v. Sterl, 2 Ill.App. 223; Jenness v. Jenness, 24 Ind. 355, 87 Am.Dec. 335; Barrett v. Barrett, 11 Ky. Law Rep. 307; Watkins v. Watkins, 135 Mass. 83; Clutton v. Clutton, 108 Mich. 267, 66 N.W. 52, 31 L.R.A. 160; State v. Moran, 37 Nev. 404, 142 P. 534; Abele v. Abele, 62 N.J.Eq. 644, 50 A. 686; Charlton v. Charlton, Tex.Civ.App., 141 S.W. 290; Ferry v. Ferry, 9 Wash. 239, 37 P. 431.

It will be noted that all except two of the above-mentioned cases were decided before 1900.

In Ritenour v. Ritenour, 1933, 98 Ind.App. 283, 185 N. E. 165, 166, the husband, as plaintiff in a divorce action,

filed an affidavit of residence and occupation. The defendant, a nonresident, filed a cross-complaint for divorce without showing her place of residence. The plaintiff dismissed his petition, but the defendant was given a divorce upon her cross-complaint.

The statute provided:

Section 1102, Burns' Ann.St.1926: " '*Cross-Petition and Proceedings Thereon*—In addition to an answer, the defendant may file a cross-petition for divorce; and when filed, the court shall decree the divorce to the party legally entitled thereto. If the original petition be dismissed after the filing of the cross-petition, the defendant may proceed to the trial of the cross-petition without further notice to the adverse party; and the case upon such cross-petition shall in all things be governed by the same rules applicable to a case on an original petition.' "

The court said:

"Appellee cites the case of Jenness v. Jenness (1865) 24 Ind. 355, 87 Am.Dec. 335, wherein it was held that the defendant in an action for divorce did not have to be a resident of this state in order to file a cross-petition and obtain the affirmative relief authorized by the statute. * * *

"Section 1102, supra, was not enacted until 1873, whereas the case of Jenness v. Jenness, supra, was decided in 1865, and does not therefore contain a construction of the statute now under consideration. It does, however, establish a definite principle of law, which we cannot disregard in construing said statute in the manner in which we do. We do not think the Legislature, by the enactment of section 1102, supra, intended to preclude a nonresident from obtaining that relief to which she is entitled, after having been forced into court at the instance of the adverse party. We are constrained from placing a construction upon section 1102, supra, that might place an innocent nonresident defendant at the mercy of the whims of an unscrupulous litigant. Generally, statutes making residence of plaintiff a prerequisite to the exercise of divorce jurisdiction do not

preclude a nonresident defendant from filing a cross-bill and obtaining a decree of divorce against plaintiff, provided plaintiff has resided in the jurisdiction the requisite time. Nor will a nonresident defendant be deprived of his right to relief on a cross-bill by a dismissal or discontinuance of the original petition. * * *

"In Jenness v. Jenness, supra, the court said: 'Thus, while our statute is intended to prevent nonresidents from making use of our courts to perpetrate frauds upon their unsuspecting wives or husbands, by coming here to petition for divorces, it, at the same time arms them with every weapon of defense which is afforded to our own people when brought into court at the suit of those whose bona fide residence here gives us jurisdiction.' We think this language is quite applicable to section 1102, supra, and hold that the word 'case' as used therein has reference to the proceedings or trial of the cause, and not to the pleadings."

In the event of the dismissal of the complaint, the burden of proving residence falls upon the cross-complainant, and, in the absence of the record, we will assume that the cross-complainant proved the residence of the plaintiff to the satisfaction of the court. "Thus appellant's contention that the dismissal of the original complaint carries out of court the case in its entirety cannot prevail."

In Sloan v. Sloan, 1927, 155 Tenn. 422, 295 S.W. 62, 63, the husband commenced an action for divorce in Tennessee, alleging that his wife was a resident of Mississippi. She filed a cross-complaint for a divorce, and the same was granted.

" * * * the complainant insists that the decree of divorce awarded defendant was invalid because her grounds of divorce arose out of the state and she had not resided in the state two years next preceding the filing of her cross-bill, as required by section 4203 of Shannon's Code.

"While such is the general rule, an exception is recognized in most jurisdictions where a resident of the state brings an action for divorce against a nonresident, and the

latter files a cross-bill seeking a divorce from the original complainant.

"This rule is thus stated in 9 R.C.L. 404. * * *

"The same principle is announced in 19 C.J. 27. * * *

"From the cases supporting these texts it will be found that the courts in the following states support this rule, to wit: Indiana, Kentucky, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, New Jersey, Ohio, Oklahoma, Texas, and Washington.

"The only court holding to the contrary is the Supreme Court of Rhode Island.

"The reason for granting such relief to a nonresident is thus stated in Sterl v. Sterl, 2 Ill.App. 223 to wit:

" 'It is a familiar principle of law that a court of equity having acquired jurisdiction of the parties and of the subject-matter of the suit will retain and exercise such jurisdiction, until the equities of all the parties are meted out to them. In this case the jurisdiction of the court is invoked by the appellee, he having, as he had a legal right to do, filed his bill against appellant praying relief and summoning the appellant into the court. When she is thus brought in, and having responded to the claims of the appellee by answering his bill of complaint, being, as it were, then forced into the court, submits herself to its jurisdiction; and asks the court to grant to her certain equitable rights, to which she claims to be entitled, then it is that the appellee challenges the jurisdiction of the court to grant to her any equitable rights, but continues to clamor for his. This position is unconscionable and indefensible upon the principles of equity. But we are told, and it is urged by the appellee, that by reason of the arbitrary provisions of the statute, there is no escape from this dilemma, and that, as a consequence, the appellant is in the court for the purpose of receiving its mandate, and yielding obedience to its orders, but without any equitable rights which the appellee is bound to respect, for the reason, as he claims that she

resided in New York, and not in Illinois, and notwithstanding she is dragged into the court, at the suit of appellee, and, as may be presumed, against her will. We think that by the plainest principles of equity the appellee is, under such circumstances, precluded from questioning the jurisdiction of a court which he has himself invoked; and that the court having acquired jurisdiction of the subject-matter, and the parties to the suit, at the instance and by the prayer of the appellee, he cannot be heard to question the jurisdiction of the court to hear, consider, and determine all the equities of the parties to the end that complete justice may be done to all in the same case.'

"We also adopt the opinion of the Supreme Court of Michigan that it follows that it is a reasonable construction of our statute that, where the plaintiff in a divorce suit has resided in this state the full statutory period, and the defendant has appeared in the same cause, the court has jurisdiction over the parties, and the right to dispose of all the issues between them upon their merits and according to equity, even if in order to do so it is necessary to grant a divorce to a non-resident defendant upon a cross-petition. * * * "

In Charlton v. Charlton, Tex.Civ.App., 1911, 141 S.W. 290, 291, the wife brought suit for divorce alleging one year's residence in the state and six months in the county. The husband counterclaimed without stating anything about his residence in the county. The wife demurred, which was overruled, and a divorce was granted to the husband. The question is raised that the husband, to state a cross-complaint or cause of action, must state that he was a resident of the county for six months. "The statute is as follows: 'No suit for divorce from the bonds of matrimony shall be maintained in the courts unless the petitioner for such divorce shall, at the time of exhibiting his or her petition, be an actual bona fide inhabitant of the state, and shall have resided in the county where the suit is filed six months next preceding the filing of the suit.' It has been held that a plaintiff, suing for a divorce, must allege and prove in-

habitance in the state and six months' residence in the county. Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90."

The court held: " * * * the requirements of the statute as to residence were only intended to apply to the plaintiff—in the language of the statute, 'the petitioner 'for divorce,' ·the person who puts the machinery of the courts in motion in a divorce proceeding. The purpose of the statute was to protect, not only the defendant in divorce proceedings, but also the interests of society, against fly-by-night divorce suits instituted by birds of passage, who, with no stability of residence, might use the courts to procure divorces upon false grounds, and sometimes by collusion with the opposite party. * * * We do not think that it was thought necessary, in order to effectuate this purpose, to make the same requirements, as to residence, of a defendant in a divorce proceeding, unwillingly brought into court, as is made of a plaintiff instituting the suit. * * * "

In Aucutt v. Aucutt, 1933, 122 Tex. 518, 62 S.W.2d 77, 89 A.L.R. 1198, the Constitution of Texas provided, Vernon's Ann.St.Const. art. 5, § 8: " 'The district court shall have original jurisdiction * * * of all cases of divorce. * * * '

"Article 1906, R.C.S.1925, provides:

" 'The district court shall have original jurisdiction in civil cases of: * * *

" '2. Cases of divorce and dissolution of marriage.'

"Article 1995, R.C.S.1925, provides:

" 'No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except, in the following cases: * * *

" '16. *Divorce*—Suits for divorce shall be brought in the county in which the plaintiff shall have resided for six months next preceding the bringing of the suit.'

"Article 4631, R.C.S.1925, provides:

" 'No suit for divorce shall be maintained in the courts of this State unless the petitioner for such divorce shall at

the time of exhibiting his or her petition, be an actual bona fide inhabitant of this State for a period of twelve months, and shall have resided in the county where the suit is filed for six months next preceding the filing of same. * * * ' "

The court said:

"An examination of subdivision 16 of article 1995, supra, demonstrates that it is purely a venue statute. This is evident if for no other reason because it appears in a purely venue article. * * *

"Under the above construction of article 4631, we hold that it is not a jurisdictional statute at all, but merely a statute prescribing the qualifications of the plaintiff in divorce cases. The plaintiff must possess the qualifications prescribed by article 4631 before he is entitled to prosecute a divorce suit in the courts of this state."

The wife filed a petition for divorce in the county of her residence. The husband resided in a different county and filed a cross-complaint for divorce. The wife dismissed her action, and the divorce was granted the husband.

The court further said:

"Of course the Legislature has power, within proper bounds, to prescribe rules of practice and procedure for the exercise of divorce jurisdiction by our district courts. * * *

"If article 4631 is a mere venue statute in regard to the six months' residence * *. * it is pure surplusage * * * because that matter is covered by the former article. It will here be noted that the six months' residence * * * is coupled with the twelve months' residence * * *. In this regard we think article 4631 has the effect to define the qualifications of the plaintiff or petitioner in divorce cases, and is not intended to circumscribe the jurisdiction. * * * Its effect is to disqualify the applicant for a divorce of the right to maintain the suit unless he has resided in the state for twelve months at the time of exhibiting his petition, and in the county in which

the suit is filed for six months next preceding the filing of the same. * * *

"Under the above record the district court of Lubbock county had jurisdiction of the parties and the subject-matter of the suit, and this even after Mrs. Aucutt dismissed her divorce action. In this connection we also hold that Mr. Aucutt had the right to continue to prosecute his cross-action for divorce after Mrs. Aucutt's action for the same relief had been dismissed, and this even though he had never resided in Lubbock county. * * *" Charlton v. Charlton, Tex.Civ.App., 141 S.W. 290, was cited with approval.

In Hale v. Hale, 1927, 104 W.Va. 254, 139 S.E. 754, the wife, an inhabitant of Virginia, brought a suit in West Virginia for separate maintenance. The husband, a resident of West Virginia, filed a cross-complaint for divorce. The plaintiff then filed a special reply setting up facts and asking for a divorce, which was granted to her.

The West Virginia Code provided, Code 1923, c. 64, § 7; c. 125, § 35:

" 'In no case shall a suit for divorce be maintainable unless the plaintiff be an actual bona fide citizen of this state, and shall have resided in the state for at least one year immediately preceding the bringing of the suit. * * *

" 'The defendant in a suit in equity may, in his answer, allege any new matter constituting a claim for affirmative relief in such suit against the plaintiff or any defendant therein, in the same manner and with like effect as if the same had been alleged in a cross-bill filed by him therein; and in such case, if the plaintiff or defendant against whom such relief is claimed desire to controvert the relief prayed for in the answer, he shall file a special reply in writing, denying such allegations of the said answer as he does not admit to be true, and stating any facts constituting a defense thereto.' "

The court quoted the rule set forth in 19 C.J., page 27, Section 238, and stated: "The principle is the same whether

the nonresident is the defendant to the original bill or the cross-bill of the resident party. It would be an anomaly to hold that the court had jurisdiction to grant one of the parties a divorce but not the other."

In Burnham v. Burnham, 1926, 120 Kan. 90, 242 P. 124, 126, plaintiff, a resident of Kansas, sued for divorce from his wife, a resident of Colorado. She filed a cross-action for divorce. The divorce was granted to plaintiff and defendant appealed.

The court held: " * * * the trial court had full jurisdiction of the cause and of the parties, on the issues joined herein and by their general appearance in person and by counsel, the fact that the defendant was a nonresident was of no significance, and a divorce, as well as any other relief justified by the issues and the evidence, could have been accorded to her. * * * "

In Burtt v. Burtt, 1922, 59 Utah 457, 204 P. 91, 94, the husband commenced an action for divorce. The defendant, a nonresident of Utah, filed a counterclaim for separate maintenance. The plaintiff attempted to take a voluntary nonsuit. Separate maintenance was granted the defendant.

The court held: "Confessedly the district court had jurisdiction of the matters set forth in defendant's counterclaim after the plaintiff had filed complaint against her in divorce, thus invoking the court's jurisdiction. Mott v. Mott, 82 Cal. 413, 22 P. 1140, 1142; [State ex rel.] Howe v. Moran, 37 Nev. 404, 142 P. [534] 535; Charlton v. Charlton (Tex.Civ.App.) 141 S.W. 290; Constitution Utah, art. 1, § 11; Fisk v. Fisk, 24 Utah 333, 67 P. 1064."

In the case of State v. Moran, 1914, 37 Nev. 404, 142 P. 534, 536, the plaintiff brought suit for a divorce, alleging statutory residence. The defendant, a nonresident of Nevada, interposed a counterclaim for divorce. Plaintiff took a voluntary nonsuit. The court dismissed the cross-bill, and this is a proceeding for mandamus.

Held: "By a strong line of decisions, under statutes, in most instances, similar to those of ours relative to mar-

riage and divorce, it has been held that a statute making residence of the plaintiff a prerequisite to the exercise of divorce jurisdiction does not preclude a non-resident defendant from filing a cross-bill and obtaining a decree of divorce against the plaintiff. * * * "

The court cited with approval the cases of Jenness v. Jenness, supra; Sterl v. Sterl, supra; and Ferry v. Ferry, 1894, 9 Wash. 239, 37 P. 431, and held that the trial court should have considered defendant's cross-bill instead of dismissing it.

From the above it is very clear that prior to 1900 and at all times thereafter there was a well-defined interpretation on the part of the courts in the United States of divorce laws similar to that of Alaska, permitting a nonresident defendant to file a cross-complaint and obtain a divorce where the plaintiff possessed the requisite residence qualifications and gave the court jurisdiction of the matter by filing a sufficient complaint.

Consequently, when Congress passed the code for Alaska in 1900, it will be assumed that it approved the above-mentioned line of decisions and rules and designedly made provision only for residence qualifications of a plaintiff.

In other words, Congress intended just exactly what its act set forth, to wit, only a plaintiff was required to have the residence qualifications.

The next question is whether or not the organic act, passed by Congress for Alaska in 1912, made residence requirements on the part of a defendant filing a cross-complaint for divorce.

The Act of Congress, approved August 24, 1912, 37 Stat. 512, was entitled, "An Act To create a legislative assembly in the Territory of Alaska, to confer legislative power thereon, and for other purposes." Section 3, 48 U.S.C.A. § 23, provided " * * * that except as herein provided all laws now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress or by the legislature: * * *."

Section 9 of said organic act, 37 Stat. 512, Section 475, C.L.A.1933, 48 U.S.C.A. § 77, provides: *"Legislative Power—Limitations.*—The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States but * * * no divorce shall be granted by the legislature, nor shall any divorce be granted by the courts of the Territory, unless the applicant therefor shall have resided in the Territory for two years next preceding the application, which residence and all causes for divorce shall be determined by the court upon evidence adduced in open court; * * *."

The section further prohibits the legislature from passing any law interfering with the primary disposal of the soil; imposing taxes upon the property of the United States; taxing property of nonresidents higher than that of residents; and other things.

The plaintiff is an applicant for a divorce, and the defendant is an applicant for a divorce in the present case. But did Congress intend the word "applicant" to include the defendant urging a cross-complaint? To hold that the word "applicant" included such a defendant would be to hold that the organic act, by implication, amended the former act of Congress, approved March 2, 1903. It is significant that there is no repealing clause in the organic act, which raises some inference that Congress did not believe it was thereby repealing or amending any act relating to Alaska, but was merely creating a legislative assembly, thereby creating special legislation as to Alaska and setting up a legislative body, whereas theretofore the general laws of the United States had required Congress itself to legislate as to all of the territories.

The title to the organic act does not infer that the act constitutes any amendment or repeal of the existing divorce laws.

Section 9 itself, by its very language, indicates an intention on the part of Congress to deal in said section only

with the limitations of the legislative power of the legislature and its right to pass any law authorizing a court to grant a divorce. If Congress had wanted to change the divorce laws, the orderly way would be to have directly made the amendment by statute on that particular subject. To include such an amendment in an organic act would be an unusual, cumbersome, and misleading method, and it will not be presumed that Congress would indulge in such practices.

When Congress provided in 1900 and the amendment of 1903 for residence qualifications of a plaintiff seeking a divorce, it made a specific act dealing specially with the subject of divorce. When it passed the organic act, the subject before it was the creation of a legislative assembly. The plaintiff wishes the court to hold that the organic act changed the situation theretofore existing relative to the jurisdiction of the district court to grant a divorce to a nonresident defendant upon counterclaim where the court had jurisdiction by reason of the plaintiff's residence. This would have the effect of amending section 3992, C.L.A., 1933, so as to require the residence of two years on the part of the defendant as well as the plaintiff.

██ The rule of statutory construction is well settled that an amendment by implication can be made only when it is clear that such was the legislative intention.

██ If effect can be given to the act of the law-making body without constituting an amendment of existing law, that interpretation must be taken.

In Ritenour v. Ritenour, supra, the statute specifically required that " 'the case upon such cross-petition shall in all things be governed by the same rules applicable to a case on an original petition.' " Though the plaintiff, a resident, had dismissed his petition, the defendant, a nonresident, was granted a divorce upon the cross-petition, the court holding that the matters set forth in the case of Jenness v. Jenness, 24 Ind. 355, 87 Am.Dec. 335, were applicable to

an interpretation of the Indiana law and upheld the decision in favor of the cross-complainant.

In Charlton v. Charlton, supra, the statutes specifically require residence on behalf of "the petitioner for such divorce." While both plaintiff and defendant had petitioned for divorce, the court held that the wording "petitioner for divorce" meant plaintiff.

To adopt plaintiff's interpretation that the organic act abolishes the right of a person not having resided in Alaska two years to file and maintain a cross-complaint for divorce would be to deprive all such persons of a remedy of divorce which had formerly existed in their favor. Such deprivation of right would be contrary to the settled and established principles of law on the matter as set forth in the Jenness and Sterl cases and adopted by the courts of other states. It would be an interpretation of the wording of the organic act which is not required by the wording thereof, and it would be giving amendatory effect to the general act on the creation of a legislative assembly of a matter relating to the subject very different from that of the organic act, to wit, the divorce laws of the code of civil procedure.

Such an interpretation seems contrary to the intention of Congress.

There remains yet the question of whether or not the cross-complaint must state the residence qualifications of the plaintiff in order for the defendant in a cross-complaint to state a cause of action for divorce, if he has not been a resident of Alaska for two years prior to the filing of the cross-complaint.

The general rule is that a cause of action or defense must be complete in itself or by matters in the same pleading which may be made a part of such cause of action or defense by reference.

In State v. Moran, supra, the court held that it was incumbent upon the defendant to prove the residence of the plaintiff in order to maintain the cross-complaint.

In Bullard v. Bullard, 1922, 189 Cal. 502, 209 P. 361, it was held that it was essential to allege in a cross-complaint the jurisdictional residence requirements of a plaintiff.

In Coulthurst v. Coulthurst, 1881, 58 Cal. 239, it was held that a cross-complaint must be sufficient in itself and cannot be aided by allegations in the complaint and that it was necessary for the cross-complainant to allege the necessary residential qualifications.

 The cross-complainant should, therefore, in order to state a cause of action for divorce, allege a two years' residence on the part of herself or on the part of her husband.

Consequently, the demurrer to the cross-complaint is sustained on the ground that the same does not allege the statutory residence necessary to give the court jurisdiction; that is, it neither alleges the statutory residence of the defendant or of the plaintiff.