THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* PEDRO RODRÍGUEZ REYES, Defendant and Appellee.

No. 59. Decided November 23, 1962.

*J. B. Fernández Badillo, Solicitor General, Arturo Estrella, Deputy Solicitor General,* and *Carlos G. Látimer, Assistant Solicitor General,* for The People. *Lorenzo Piñeiro Rivera, José Efraín Cabrera Rivera,* and *E. L. Belén Trujillo* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM.

 The question for determination in this case is whether Act No. 108 of April 30, 1940—31 L.P.R.A. § § 509–514 [1] amended § 263 of the Penal Code—33 L.P.R.A. § 991, to the effect of declaring that the offense of abandonment of minors provided by this latter provision has been limited by said Act insofar as illegitimate children are concerned, to the abandonment of those who are under sixteen years of age. We believe it does not, that such amendment

---

[1] Act No. 108 provides as follows:

SECTION 1.

"First the father and then the mother are obliged to feed, clothe, support, educate, and provide shelter for their illegitimate children under sixteen years of age, whether acknowledged or not, in accordance with the needs of the minors and with regard to the available means of the parents."

SECTION 2.

"The father or the mother who fails in that obligation or wilfully refuses to fulfill it and persists in his or her refusal after a formal demand to do so has been made, shall suffer the proper penalty for abandonment and neglect of minors, according to the provisions of the Penal Code."

SECTION 3.

"The formal demand mentioned in the preceding Section 2 shall be ordered by the municipal judge of the municipality where the presumptive parents of the minor reside, on a written application sworn to by any person having said minor under his care."

546

has not been made either expressly or impl'iedly, and that, on the contrary, the aforesaid Act No. 108 establishes (a) a summary proceeding to obtain the acceptance of the paternity of illegitimate children under sixteen years of age, and (b) when the paternity has been admitted, the obligation to provide support, medical attendance and clothing for said minor subsists until he attains the age of sixteen years only.

It is fair to state that the consideration and study of this question has been greatly facilitated by the careful and accurate exposition of the case, in the light of the facts in which the parties agree, and by the clear and exhaustive analysis made of the l'egal problem, in the decisions of the District Court, Río Piedras Part, and of the Superior Court, San Juan Part, as well as in the able briefs submitted by the Solicitor General and by defendant's counsel.

In appellant's brief the facts of the case are summarized thus:

"The defendant, Pedro Rodríguez Reyes, was required, pursuant to Act No. 108 of April 30, 1940 (Sess. Laws, p. 672; 31 L.P.R.A. §§ 509–514), as the presumptive father of the minor Pedro Torres, to comply with his obligation to support him. The request was based on the affidavit of Margarita Torres, who alleged having had extra marital relations with the defendant, from which the aforesaid illegitimate child was born and to

SECTION 4.

"Within the eight (8) days following the formal demand, the person on whom such formal demand was made shall appear before the official who made it and shall admit or deny the paternity. If he should admit it he shall state whether he or she agrees to fulfill his or her obligation of providing the abandoned minor with the indispensable food, clothing, and medical attendance, and a record shall be made of the statements of the parties appearing."

SECTION 5.

"If, after the presumptive father or mother has appeared before the municipal judge or the justice of the peace and has admitted the paternity, he or she fails to comply with his or her obligation towards the minor, said judge or justice of the peace shall send the papers to the juvenile court of the judicial district where the minor resides, and the judge of the said court shall order, if probable cause exists, that the corresponding complaint for abandonment of minors be filed in the court by the com-

whom the defendant had failed to give support since May 13, 1953, by failing to provide the necessary food, clothing and medical assistance. At this time the minor was only eleven years old.

"The defendant appeared to answer the request and denied that he was the minor's father, for which reason an information was ordered to be filed against him for the offense of Abandonment of Minors, § 263 of the Penal Code, 33 L.P.R.A. § 991. In this case the defendant was sentenced to pay a fine of $15, which he did after the appeal taken from said judgment was dismissed.

"Again the defendant was prosecuted for the same offense and on this occasion without having been previously required to admit or deny the paternity. He was found guilty and sentenced to serve six months in jail, which judgment was suspended on condition that he should pay a weekly allowance of $10 to his son. This judgment was affirmed by the Superior Court. He proceeded to serve it without taking advantage of the condition, but he filed a petition for habeas corpus in the Superior Court alleging that the judgment had been rendered without jurisdiction on the grounds that the jurisdiction corresponded to the Juvenile Court and that it was necessary to require him to admit or deny the paternity, all by virtue of Act No. 108, *supra*.

"This petition was denied and the judgment on appeal was affirmed by this Court.

---

plainant or by a probation officer, against the presumptive father or mother responsible for the abandonment and neglect of the minor, and he shall proceed to try the case, following the procedure established for such offenses in the Code of Criminal Procedure.

"The jurisdiction of the juvenile courts shall be exclusively to take cognizance of the cases included under this Act, and from such judgments as may be rendered appeal may be taken to the Supreme Court of Puerto Rico by the father or mother declared guilty of abandonment."
SECTION 6.

"When a father or a mother who has admitted the paternity of the minor has been sentenced under this Act, for having failed to fulfill his or her obligations towards the child, the judge taking cognizance of the case may suspend the judgment under such conditions as he may consider it well to impose, for the welfare of the abandoned or neglected child, according to Section 263 of the Penal Code."

"The defendant finally decided to comply with the suspended condition imposed in the judgment, and paid his child a weekly allowance of $10.

"However, on May 13, 1958 he discontinued the weekly allowance to his son and, upon being required to show cause why he should not be confined to serve the sentence because he had failed to comply with the condition that kept it suspended, he appeared and alleged that at said time the minor had reached sixteen years of age, and that by virtue of § 1 of Act No. 108, *supra,* and of the ruling in *Rosario* v. *Suárez,* 67 P.R.R. 552 (1947), he was not bound to continue complying with the condition established since the criminal action against him had been extinguished."

There is no conflict as to said facts.

The District Court, Río Piedras Part, in its decision of September 30, 1958 reached the following conclusions:

(1) Pursuant to the ruling in *People* v. *Lamboy,* 59 P.R.R. 173 (1941), Act No. 108 amended § 263 of the Penal Code,[2] insofar as illegitimate children are concerned, in making jurisdictional the requisite of previous request for the acceptance or denial of the paternity.

(2) Pursuant to the ruling in *Rosario* v. *Suárez,* 67 P.R.R. 552 (1947), it amended said provision in limiting the criminal action against the father of an illegitimate child who accepts the paternity and then fails to comply with said obligation until said child attains 16 years of age.

(3) Act No. 108 does not regulate, nor control, nor apply to the case where the parents who are required as a preliminary and jurisdictional question to admit or deny

---

[2] Section 263 of the Penal Code reads thus: (33 L.P.R.A. § 991.)

"Every parent of any legitimate, legitimated, natural, or acknowledged illegitimate and adopted child who wilfully omits, without lawful excuse, to perform any duty imposed upon him by law or to furnish necessary food, clothing or medical attendance to such child, is guilty of a misdemeanor; *Provided, however,* That when complaint is filed against a person under the provisions of this section and such person is sentenced, the court may suspend sentence under such condition as it may deem convenient to the welfare of the child."

the paternity of an illegitimate child, deny the same. The case law, from *People* v. *Lamboy, supra* has established in the cases of denial of paternity that the regular courts are the ones vested with jurisdiction under § 263 to prosecute the presumptive father. *People* v. *Emanuelli*, 61 P.R.R. 202, and *People* v. *Ramos*, 61 P.R.R. 322 (1943).

(4) The parent who within the proceeding established by Act No. 108 denies the paternity of the illegitimate child, is subject to be prosecuted under § 263 of the Penal Code until the illegitimate child reaches 21 years of age.

(5) The obligation of the appellee to provide support for his illegitimate child has not ceased by reason of his son having attained 16 years of age.

On the contrary, the Superior Court, San Juan Part, reversed said decision because in its opinion Act No. 108 amended § 263 of the Penal Code concerning the age of the illegitimate child to claim support. With respect to the decision it reverses, the Superior Court stated:

" . . . The district judge speculates that the lawmaker meant to be indulgent with the presumptive father by reducing the term within which his presumptive illegitimate child was entitled to claim support if said presumptive father acknowledged him without further judicial elaboration at the hearing of the request. We can not agree with the distinguished judge in this theory. The inherent rights of persons can never be subject to arbitrary transactions and this would be the result by attributing said purpose to the lawmaker in enacting Act No. 108. The lawmaker knew of the existence of amended § 263 of the Penal Code by virtue of which an illegitimate child could exercise the criminal action against his father. By Act No. 108, *supra,* the lawmaker could have again amended § 263 of the Penal Code so as to permit a presumptive illegitimate child to require the presumptive father to answer criminally for his negligent act in failing to provide support without need of including the phrase 'under 16 years of age.' The lawmaker could have said first the father and then the mother are obliged to feed, clothe, support, educate, and provide shelter for their illegitimate children, whether acknowledged or not, in accord-

ance with the needs etc. The phrase 'under 16 years of age' is a valid amendment to § 263 of the Penal Code introduced by Act No. 108 to include the illegitimate children whether acknowledged or not."

The Superior Court held that "when the child is over 16 years of age the defendant no longer has the obligation to provide for his support as ordered by that criminal sentence. The proper thing is to file an action by means of a complaint claiming support, giving the defendant in this case the opportunity to defend himself in court."

The errors assigned in the decision of the Superior Court are (1) in determining that the appellee had been prosecuted under Act No. 108; (2) in deciding that Act No. 108 amended the aforesaid § 263 "insofar as illegitimate children are concerned"; and (3) in deciding that Act No. 108 amended § 263 "concerning the age of the illegitimate child to claim support."

The Solicitor General makes an able analysis of the "climate and atmosphere of origin" and of the nature, purpose, and scope of the aforesaid Act No. 108 in discussing the three errors jointly. He informs, in short, that in the course of the years since 1902 the right to support of the illegitimate children, from the point of view of the civil law, remained, in its extent and nature, the same as that of the natural children and of the legitimate children; that in 1931 § 263 of the Penal Code was amended to include among those who could be prosecuted for the offense of abandonment of minors, the parents of illegitimate children, it being decided in *People v. López*, 54 P.R.R. 279 (1939), that the fact of paternity could be investigated and established within the criminal prosecution for abandonment of minors; that in *Pérez v. Superior Court*, 81 P.R.R. 805 (1960), this Court, by a decision of 4 to 3 held that the doctrine established in *People v. Santiago*, 70 P.R.R. 798 (1950), to the effect that the presumptive father of an illegitimate child born of a

married woman 180 days following the marriage of the mother and prior to the 300 days following its dissolution by divorce, could not be prosecuted under § 263 and Act No. 108, without first having established the true filiation in a civil proceeding to that effect, had not been overruled in *Agosto v. Javierre*, 77 P.R.R. 444 (1954); that the next forward step in the legislation was taken in 1940 with the enactment of Act No. 108, then Act No. 229 of May 12, 1942 was enacted, and finally, the maximum objective culminated with the enactment of Act No. 17 of August 20, 1952. He therefore argues that Act No. 108 could in no way represent a receding step; that this is an Act of a procedural character which did not create any substantive right in favor of the illegitimate children because the obligation to feed the minor was already imposed by law; that the purpose of this Act was to procure, by means of a summary proceeding, that the illegitimate child receives support from the person who begets him, this special and summary proceeding being intimately connected with the law which establishes a system for Juvenile Courts, said courts being vested with exclusive jurisdiction to take cognizance of the violations of § 263 of the Penal Code whenever the other procedural requirements stated in the law were present; that this explains the limit of its application to children under sixteen years of age since the jurisdiction of those courts was limited to children under 16 years of age; that in view of the push that was being given to the legislation concerning natural and illegitimate children it is not reasonable to conclude that upon enacting Act No. 108 the lawmaker had the intention to repeal the applicability of § 263 to cases of abandonment of illegitimate children between the ages of 16 and 21; that said interpretation is in conflict with the policy of the Legislature of placing on the same footing, in any possible way, the illegitimate and the legitimate children.

The Solicitor General further alleges that Act No. 108 does not amend § 263 neither expressly nor impliedly for they are neither incompatible nor irreconciliable nor is the legislative intent to repeal so manifest as to remove the doubts of said intention. *Rivera* v. *District Court*, 39 P.R.R. 716 (1929); *Portela* v. *Reg. of San Juan, Sec. 2*, 22 P.R.R. 81 (1915); *Georgia* v. *Pa. R. Co.*, 324 U.S. 439, 89 L. Ed. 1051 (1945); *West India Oil Co. (P.R.)* v. *Domenech*, 311 U.S. 20, 85 L. Ed. 16 (1940); *United States* v. *Borden Co.*, 308 U.S. 188, 84 L. Ed. 181 (1939); *Purdy* v. *United States*, 146 F. Supp. 762 (1956); *Jones* v. *Sharyland Independent School Dist.*, 239 S.W.2d 216 (1951); *Moncus* v. *Raines*, 194 S.W.2d 1 (1946), 50 Am. Jur. §§ 534 to 538, inclusive, and 561, 563, 564; CRAWFORD, Statutory Construction, § 2014, Anno. in 20 L. Ed. 235.

Lastly, he assigns that the additions by way of amendments made by the Senate in its own bill of Act No. 108 of the phrases "shall admit or deny the paternity" and "if he should admit it" in § 4 of the bill; of the phrase "if he had admitted the paternity" in § 5; and of the phrase "had admitted the paternity of the minor were," in § 6 of said bill, indicate an indubitable legislative purpose of limiting the applicability of Act No. 108 to cases in which the paternity is admitted by the father.

■ If S. B. No. 82 had been approved as originally worded its effect would have been to transfer *wholly* to the exclusive jurisdiction of the juvenile courts the violations of § 263 of the Penal Code by parents of illegitimate children under 16 years of age, when said parents accepted the paternity in answer to the demand made upon them, as well as when they should deny it. As a result the regular courts would have retained jurisdiction to take cognizance of violations under § 263 by parents of illegitimate children over 16 years of age.

■ With the amendments introduced, however, the transfer of jurisdiction was reduced even more to include only the cases in which the paternity had been admitted and in the cases in which it had been denied, the jurisdiction would remain with the regular courts, *People* v. *Emanuelli*, 61 P.R.R. 202 (1942), not until 16 years of age but until 21. The father who denies the paternity is taken to the regular courts not because he violates the provisions of Act No. 108, which is a statute of a procedural nature, but because he violates § 263 of the Penal Code, which is a provision of substantive law. We can not conceive, however, how it can be alleged that a person who freely prefers to reject the procedural vehicle offered by Act No. 108, is likewise relieved of his substantive criminal responsibility by reason of neglect in his obligation to provide support to his illegitimate children over 16 years of age. It should be borne in mind that this Act, like many others of a similar nature which we have mentioned, pursue the welfare of minor children and it was approved for their benefit and not for the benefit of their negligent parents.

There remains to consider the ruling of this Court in the case of *Rosario* v. *Suárez, supra*, with respect to the scope of Act No. 108. This case dealt with a civil action for the limited acknowledgment of natural children and their support. It was alleged that the court erred in ordering defendant to provide support to a child over 16 years of age because pursuant to § 1 of Act No. 108, the obligation of the father or of the mother to provide support for their illegitimate children has been limited to those under 16 years of age. This Court held that it was not so, adding: 67 P.R.R. at 556.

" . . . What the Legislature did was to limit the criminal action against the father or the mother for violation of Act No. 108 of 1940 for the abandonment of illegitimate children, whether acknowledged or not, under sixteen years of age. This does not mean, however, that a civil action for support, as a separate action or as part of a filiation suit, does not lie for illegitimate

children over or under sixteen years of age, according to the right which they have under § 128 read together with § 143 of the Civil Code. Criminal action was limited, but not so the civil action. In a case on this same matter we held, following a California decision, that 'the provisions of the civil law in the premises in no way affect the interpretation to be given to the criminal statute.' . . . For reasons unknown to us, but which the Legislature found justified, it limited the criminal action against parents to cases of abandonment of illegitimate children under sixteen years of age."

The appellee maintains, on the basis of the ruling in the *Rosario* case, *supra*, that he has not violated § 263 of the Penal Code because his obligation to provide support for his illegitimate child ceased when he attained 16 years of age. We do not agree with appellee, since the aforesaid dictum in the *Rosario* case, *supra*, refers to the cases governed by Act No. 108, that is, to those in which the request have been made on the putative father, the latter admits the paternity of the illegitimate child under 16 years of age.

For the reasons previously stated we believe that there is justification to conclude and we decide that the criminal action under § 263 for abandonment of illegitimate children, of or over 16 years of age, lies.

██ It appears from the statement of facts previously copied that on the first occasion that appellee was required to acknowledge the paternity pursuant to the provisions of Act No. 108, and in view of his refusal to do so, he was prosecuted in the ordinary courts and having been found guilty, was fined for $15, which he paid. The present proceeding has its origin in a second complaint for violation of § 263 of the Penal Code, without the previous request having been made because it was unnecessary since said request had been made in the former suit. Act No. 108 with the limitation of the 16 years mentioned by the appellee plays no role because as we have concluded, said Act and its aforesaid limitation is controlling only when the presumptive fa-

ther acknowledges the illegitimate son upon being required to do so, pursuant to Act No. 108, the obligation of the father to provide support for his illegitimate child being thereby limited until the child attains 16 years and, therefore, the criminal action in that case being likewise limited. Section 263 of the Penal Code which contains no provision of limitation of age, includes the abandonment of illegitimate children, it being possible to establish their paternity in said proceeding. *People* v. *Avilés*, 66 P.R.R. 278 (1946); *People* v. *Emanuelli, supra;* and *People* v. *López, supra.*[3]

The decision of the Superior Court, San Juan Part, rendered on September 12, 1960 will be reversed and the decision of the District Court, Río Piedras Part, rendered on September 30, 1958, will remain in full force.

---

[3] For the purpose of being more explicit we have made reference in this opinion (a) to the distinction existing prior to the Judiciary Act of 1950 between the different courts constituted in Puerto Rico, notwithstanding the fact that after the enactment of the aforesaid Act those distinctions have disappeared—Act No. 11 of July 24, 1952—4 L.P.R.A. § 1; and (b) to the designation of illegitimate children, admitting that by provision of Act No. 229 of May 12, 1942 all children born out of wedlock, subsequent to the date of this Act, shall be natural children whether or not their parents could have married at the moment when such children were conceived. 31 L.P.R.A. § 501.